We will begin with case number 201173, Implicit against Sonos. Mr. Romrel, whenever you're ready. May it please the Court, Jason Romrel on behalf of Appellant Implicit. This Court held in eGenera that under Section 256 a patent cannot be invalidated if inventorship can be corrected instead. Courts have consistently recognized that Section 256 is a savings provision, one that has no timing requirement and no diligence requirements. And it's retroactive to the beginning of the patent. It is retroactive. In fact, the Board correctly held that on remand that the 256 applies retroactively, and it applies in general retroactively, not just to Section 102F, but to other provisions or ways that a patent can be invalidated as well. So here this Court remanded for the Board to consider the impact of Implicit's corrected inventorships. Can you clarify one thing? When the, was the original 2019 Board decisions, is that there? That's correct. Were they vacated by any order of this Court? Where did the, what was the status of the 2019 Board decision at the time of the consideration of this question of whether you would be allowed to have the corrected patent considered? So the Board's decisions were ultimately vacated in light of Arthrex. Right. And I believe that that happened. Right, but then the Supreme Court vacated our decision vacating that one, and I want to understand precisely what happened after that. That's correct. So the Supreme Court vacated that, and then it came back to this Court. This Court reinstated the Board's decisions. And allowed Implicit a short period of time to seek director review before the director. And that's when Implicit filed a certificate of corrections before that director review proceeding took place. So we presented this issue to the director and our petition for director review that inventorship had been corrected and that the Board needed to reconsider its validity determinations in light of that corrected inventorship. So at that time, the 2019 Board decision was no longer vacated. Is that right? That's correct. So the Supreme Court granted certiorari vacated, as your Honor said, sent back to this Court, and then the panel of this Court reinstated the decision. This wasn't at all just idle, what I'm trying to understand, because here's what I'm trying to understand. And I guess this may be a question for everybody here. Why are we not talking about this issue in front of us as a mootness issue? The Board's decision about the unpatentability of the claims of the uncorrected patent is a moot point, because the PTO has actually corrected it, the patent, that's retroactive. There is no longer an uncorrected patent. And why are we not talking about this under the rubric of mootness and what we are supposed to do as a Court when the decision that's in front of us, the Board decision, is moot, or rather the dispute about that decision is moot, whether vacating, whether dismissing, or whatnot? Your Honor, I agree that this could be handled under the doctrine of mootness, that the decision could be viewed as being moot. The way that this was presented and argued when we were first before the Federal Circuit is that Sonos and the intervener suggested or argued that while the correction was retroactive, that doctrines of judicial estoppel, forfeiture, and waiver applied so that the decision had no impact, essentially. Do I remember right, in that motion practice, you suggested that one reason to give the Board an opportunity to address the correction is that mootness might, in fact, be at play here? I believe that's correct, Your Honor. I believe that's correct. In fact, that's entirely consistent with all we understand about Section 256, and we've seen this play out with decisions like Lending Tree and Airbus that we cited in our briefs, where even after a jury verdict, this court and veteranship changed while the case was on appeal. This court remanded back to the district court to consider a motion to vacate the previous judgment, recognizing that a fundamental fact had now changed the veteranship. So one further, at least for now, question along this line of mootness. When a matter becomes moot, the kind of norm is the Court of Appeals dismisses the appeal. That would not make you happy, right? Because there would be a standing, which is why I asked you questions about the status of the 2019 final written decision, a standing final written decision holding claims unpatentable. Sometimes, in addition to dismissing, the appellate court vacates the underlying decision. That is, according to the Supreme Court in U.S. Bank Corp Bonner Mall, a equitable remedy. Why would you not be disentitled as a matter of equity to that remedy by your delay in having raised the inventorship correction issue? I think we would be entitled to the equitable remedy of vacature should the court decide to proceed that way because courts have routinely recognized that inventorship is a complex issue of law, one that involves many underlying factual components or moving parts. In this case, it was the board's final written decision that illuminated some of the very issues for us that go to inventorship. And so, we timely entered and made these corrections once we recognized that the board's final written decision was no longer vacated, that those facts were holding, and that those facts would influence those very questions of inventorship. And so, we did it still while the proceeding was live and our opportunity for direct review and timely made that correction while the proceeding was still before the agency. And under our threats, we understand and know that the director's review, or at least the option of the director to review the proceeding is, the proceeding is not over, rather, until the director has that opportunity to actually review. And you have a duly appointed executive officer that has that final word. So, I think that's an important point. And also just, again, we look at the language of section 256. It's very unique in the patent law in that a patent shall not be invalidated if inventorship can be corrected. Sometimes we, at least I find myself in the position of trying to speculate why in a given matter did the party in front of us not raise something earlier. And sometimes it's pretty apparent that there would be a downside risk to do that. Some kinds of corrections are perspective only, but not this one. And I guess I want to understand why this request to correct the inventorship took so long to get out of the starting gate. It's not apparent to me what the downside risk to that was. Your Honor, implicit belief throughout the original proceeding before the board that the inventorship on the face of the patent was correct. That Mr. Ballestani and Mr. Bradley were inventors and that the work of Mr. Carpenter inerred to their benefit. We had submitted testimony to that effect and we believe the documents corroborated that. Were you using Mr. Carpenter as more of a person assisting with reduction to practice as opposed to viewing him in the concept of being a joint inventor? That was our initial understanding. And again, these issues tend to be muddy. One court acknowledged that inventorship is among the muddiest metaphysical doctrines in the metaphysical world of patent law. It's complicated. And at the time, we did believe, based on our best ability to reconstruct what had happened almost 20 years earlier, that the inventorship on the face of the patent was presumptively correct and that Mr. Carpenter's work inerred to their benefit. Now, when the board made its final written decision, the board made a couple important findings there. It found that the work of Mr. Carpenter, that his authorship of the document that became the provisional application and his writing of the source code was not something that inerred to the benefit of Mr. Bradley and Mr. Balistanian. Moreover, the board found that we did not establish that Mr. Balistanian and Mr. Bradley had conceived of the invention earlier and then communicated that conception to Mr. Carpenter. So, in light of the board's final written decision, implicit reassessed these important issues and determined that Mr. Carpenter himself must have been a contributor to the conception of the invention that's claimed and corrected the inventorship. Now- Again, what would have been the downside to filing the correction papers? So, one can speculate Mr. Carpenter refused to sign something to say that he was inventor or Mr. Carpenter is no longer affiliated with the company, so you'd be splitting the ownership. Is there anything you can tell me about that? I can tell you that Mr. Carpenter, I believe during the time of this proceeding, lived in Australia. He wasn't in the United States. This is before the internet era. Again, I just know that he lived in Australia, but I also know, too, that at the time, there wasn't- This is what implicit believed. They believed that Mr. Carpenter's work simply inured to the benefit of the previously named inventor. So, it wasn't as if they came to that conclusion earlier. It was really the board's final written decision and those findings there that shed additional light. But did you wait two years after the final written decision to actually seek the correction? Or give me a sense of the timeline just so I understand the precise timeline. To answer your question, it was approximately two years, but I can explain why that shouldn't matter here. So, this all occurred in the backdrop of this court's decision and the Supreme Court's decision in Arthrex. So, for the vast majority of that time, the board's final written decisions were either stood subject to vacature under this court's Arthrex remedy or were, in fact, vacated. So, those very findings that we felt would heavily influence the inventorship determination, it was unclear what would happen with those findings. So, implicit pursuit of its remedy under Arthrex, seeking a vacature of those findings, and shortly after the Supreme Court made its decision and it had the opportunity for direct review. Today, that occurs immediately after the final written decision. But that wasn't the case in 2021, of course. Counsel, sometimes when a litigant changes its position, it is aware of that alternative position because of the arguments that are made by its adversary, right, by the opposing party. Was there something about Sonis' position that could have led Implicit to understand that this was an alternative theory that could have been presented? I don't think so, Your Honor. I think any time a party is looking at conception and reduction of practice and inurement, these questions can come up of whether or not someone is part of the conception or their work is merely inurent to the benefit of the inventive entity on the face of the patent. In this case, Implicit believed that that was not the case, that the inventorship on the face of the patent was correct. I know that my friends at Sonos and Intervenor have suggested that we perhaps could have raised this as an alternative argument. I don't think that's correct. I think that the board is very clear that it entertains the inventorship in front of it on the face of the patent. It doesn't consider alternative inventorships until those have actually been executed. So, actually, on that point, could the board rule that the way a court could, that the inventorship is wrong, and order the director to, the way a court can, to correct the inventorship? That's 256 speaks only about courts doing that. Your Honor, I think that's correct. I think that the board does not have the ability to do that, and the board has, in fact, recognized that correction of inventorship is not within its authority in an IPR proceeding. But you could get the board to conclude that the inventor, that Carpenter was, in fact, an inventor, at least in the alternative, in which case the priority question gets transformed, right? I don't think we could get the board to make a conclusion like that, actually, Your Honor. I think the issue ... I don't remember in your brief here, you're saying that it would be relevant to a question about forfeiture, for example, to say, if it were true, that we didn't wait too long to present this to the board. We couldn't have presented it to the board. It's not a board issue. It becomes a board issue only after you go get the director to do it. I believe we did point out in our reply brief that we couldn't have raised this as an alternative argument because the board has interpreted its authority as not being able to address inventorship during an IPR proceeding. Of course, implicit didn't know it needed to change its inventorship at the time. It was really the final written decision that shed light on what the current inventorship is. I'm still taking issue with the two years post the final written decision, so I understand what you're indicating in terms of not being able to raise it during the IPR proceedings and the argument you're making there, but maybe just give me a sense of why it had to be a whole two years post the final written decision. Well, Your Honor, again, I think the best answer to that question is the Arthur's decision, and this inventorship change was so much informed by what came out of the final written decision, and for this two-year period, we were not sure what the status of those final written decisions would be. It was possible that they would be vacated, and we would be sent back to the board again for another final written decision. Perhaps the board would come out differently this time. We simply didn't know, so implicit pursued its remedies under Arthrex to deal with that issue first, and then once those final written decisions were new to the Supreme Court's remedy, that's when we made the correction that we did. Thank you, Your Honor. Thank you. I will restore your rebuttal time. Thank you, Your Honor. Mr. Richter? Yes, Your Honor. Good morning. Cole Richter on behalf of Sonos, the athlete. May it please the court, this court's limited remand order in 2022 was simple. It was to allow the board to issue an order addressing what, if any, impact the Certificates of Correction would have on the final written decisions, and pursuant to that remand, the board determined that implicit both waived and forfeited any annotating arguments that it failed to make before the board during the proceeding, including annotating arguments based on a new inventive entity. Thus, it concluded that the Certificates of Correction did not have any impact on the final written decisions. This is not specifically for you, but maybe for the audience. So, the relevant inquiry here is whether a particular piece of prior art, Janewski, predates the invention. So, ordinarily, the invention is the priority date listed on the patent when it was applied for, which, in this case, is after the Janewski prior art, but because the patent owner has the right to come in and show that they actually completed the invention before the date on the patent, and so when you talk about antedating, that's the inquiry. Exactly right, Your Honor. Yes, and this was actually a feature of the prior law before the 2012 American Invents Act. Yes. So, what actually enables patent owners like Implicit to do is provide evidence during the proceeding and say, hey, I actually invented this. I invented my patent before the prior art, even though I filed it after the prior art, and that's exactly what Implicit did during this proceeding. And the whole dispute about whether Carpenter is one of the inventors matters because if he didn't do his work and he was an inventor until later, wouldn't help if he was an inventor and he completed his work before, then that helps them get a priority date earlier, but the rules when you're relying on somebody, when you're inventors and you're relying on a non-inventor to complete the process, you understand what I mean by that. Yes. There are certain rules, and the board said, you didn't show that. So, bringing him in as an inventor or maybe completely solves their entity problem of, you may have arguments to the contrary, but it certainly helps. Yes, according, yeah, Implicit's argument is that it helps. And there's actually, as your honors know, there's extra evidentiary burdens that are incumbent on the patent owner when they try to establish and dating or swear behind. Corroborating evidence is a necessary element that the patent owner needs to prove, and here the board concluded that the patent owner failed to provide corroborating evidence of the conception and failed to show- But we're not here on that question right now. So, I'm going to let you talk about, let's just call it forfeiture. I don't think for purposes of today, we don't need to keep going back between waiver and forfeiture. This is, forfeiture is just, they waited too long to do this. But can you address my whole inquiry about mootness? Why this is not a properly thought of as the question of the validity of the patent, of the uncorrected patent is a moot issue. So the question is, what do we do with this moot case? Dismiss the appeal, dismiss and vacate the decision, or what? I think mootness is perhaps an alternative reason why this panel could dismiss the appeal. I think dismissal and vacater is not appropriate because Sonos established before the patent office that this patent is invalid for Genevski. So dismissal and vacater would actually benefit the patent owner when that's not the remedy that was at issue. It's not the remedy they argued for, and it would disenfranchise the appellee Sonos. What is your response to the types of questions I was asking opposing counsel in terms of the timeline? They're indicating that because of like the Arthrex decision and the like, they have an explanation for why they waited two years after the final written decisions to seek correction of inventorship. Do you have a response to that? Yeah, as we know, Arthrex was a decision about the constitutionality of the administrative patent law judges, and it affected IPR proceedings. There are many other matters that the patent office handles. Corrections would be one of them. The corrections do not go to APJs. They're handled by other personnel in the patent office. So the Arthrex decision is no basis to have waited two years to correct these patents. Do I remember correctly or not whether this litigate in particular had raised an Arthrex argument in their appeal? Implicit, yes. And when the appeal was initially filed, implicit actually filed an opening brief, and its own argument in that brief was an Arthrex argument, and it asked for the remedy of vacator or a remand to request a constitutionally appointed. You said that was its only argument? That was the only argument implicit raised in its initial opening brief. At some point, implicit had switched counsel, and the new counsel had then said, actually, can you please vacate the ... I want a new remedy, the dismissal of the appeal and a vacator of the decision. And that was the remedy that many appellants were asking for at the time, was a dismissal of the appeal. This court did order that dismissal. Vacator. Ordered vacator. Vacator, and yes. And then that's when the decision went up to the Supreme Court, which vacated this court's vacator, and then the appeal was reinstated. And this panel allowed implicitly struck the prior briefing, allowed implicit to request direct review and then file a new opening brief. So just returning to forfeiture, I think just like ... So as part of forfeiture, what is it that you think the board could have done had this year being an argument ... I guess there are two possibilities, right? An argument that Carpenter was a co-inventor, and the second is what? By the way, we have already received from your sister over there, part of the BTO of the director, a correction, give effect to it. Are you suggesting, or did the board suggest in its forfeiture conclusion that implicit could have asked the board to determine that Carpenter was a co-inventor? No, I don't think they suggested that. I think the board said if implicit had argued that Carpenter was an inventor and demonstrated some ability to correct, like filing the petition to correct, the board could have considered that argument and perhaps would have. I don't see any reason why implicit couldn't have asked for that and couldn't have ... So the thing that was delayed is simply the request to the director to correct under 256. Yes, and the fact that they did not argue conception, reduction of practice under that particular entity. So that would be a ... So there's two reasons. Yes, they did not correct. They did not ask for the correction in time. In fact, waited very long, two years after the proceeding was open, and then they didn't make the argument during the proceeding. And that's why it's ... Two years after the proceeding concluded in terms of final written decisions, you mean, right? Yes, correct. The final written decisions were September 2019, and the correction was, I think, November of 2021. What is the basis for saying that they should have asked during the original proceeding for Mr. Carpenter to be named an inventor? The basis was that the inventorship is based on all of the evidence that implicit itself produced. It's their own evidence. Nothing that the board did illuminated the inventorship. The board simply concluded that implicit did not provide corroborating evidence showing that Balasanian and Bradley told Carpenter about the invention. So implicit is arguing ... Your view is that they should have anticipated that this was a likely outcome, that the board would have made fact findings that would have suggested that Carpenter was an inventor? I don't think that the correction is appropriately based on what the PTAB found in its final written decisions. I think they are taking a look at the evidence and saying, well, Mr. Carpenter's name is the only name on the source code, the only name on the Word document. Therefore, he conceived it. I think that's what they're saying now. And if that's what they're saying now, they could have corrected during the proceeding because it's the same evidence. And just to ... I think you made this clear already, but I make it extra clear. When you say could have corrected, you don't mean could have simply and only argued to the board that Carpenter was part of the inventive entity. What you mean is could have gone to the director, got the certificate, then returned to the board and said, look, this patent now has on it a different group of inventors. Our issues are therefore changed. Yes, your honor, I think that's right. At a minimum, they could have filed the petitions to correct inventorship and then argued to the board, hey, I filed a petition to correct inventorship. It will be corrected because it's a ministerial task by the patent office. They're not going to fight me on it. So I would like to argue that the inventive entity is the inventive entity I've asked to correct to. So at a minimum, they could have done that. They could have also asked the board to stay in the proceedings while the petitions office handled the petition to correct. And then they could have ... Does the board ever do that? I thought the board in IPR is essentially ... It's under a deadline, which it takes very, very seriously. Yes, a one-year deadline. There is a provision to allow the board to extend that one-year time period, which I believe it's done in a few remote cases. But if it was an important feature of the patent owner's argument, it could have at least asked. The board may not have granted it, or the board may have said, well, why don't you argue both? And if it's correct, then your argument here will apply. If it is not correct, your argument here will apply. I take it from the way you're making the point. You don't know of prior cases where this kind of pattern has actually arisen? The exact pattern here, no. I've never seen a party say, please delay proceedings. We're going to go to the director for a correction of the mentorship. I've seen certificates of correction under 255 made during patent office proceedings, but not under 256. Right. No. I think we should hear from the government. Thank you. Thank you, your honors. Good morning, your honors. May it please the court, Robin McBride on behalf of the intervener and director of the United States Patent and Trademark Office. I'd like to point out that all of the evidence concerning inventorship was in the hands of Implicit when they filed their patent owner response. So there's no reason that Implicit had that evidence. They could have requested a petition to correct inventorship at that time. There's nothing the board did here to change inventorship. They didn't determine inventorship. They didn't assess inventorship. They simply accepted the inventorship that Implicit argued, which was based on Bradley and Bolasanian as the two inventors, and Guy Carpenter was essentially a pair of hands. It was their burden to anteate the Geneski reference, to show prior conception by Bradley and Bolasanian, and also to show communication of that invention to Guy Carpenter. They just failed to present sufficient evidence to prove that point. They just had a declaration from one of the name inventors. I'm not quite sure why you're telling us this, right? We do not have in front of us any issue about whether on the original uncorrected inventorship the board's decision of unpatentability was incorrect. I think the point is Implicit- That's a moot issue. I agree. I agree. That is not an issue on appeal. The reason I'm raising it is because Implicit has argued that fact findings made by the board in its final written decision illuminated or shed light on inventorship, and that's what required their change. Can you think of any reason, and now I'm thinking of the kinds of questions I was asking your counterpart, would there have been any downside to the patent owner to say, to go and seek the addition of Carpenter as an inventor? If you remember in eGenera there's a reference to one kind of downside that there can sometimes be is a worry about splitting ownership which can be disastrous for the patent owner. Is there anything like that here? Or it seems to me it's helpful to the board's current position if the answer is no, that there was no price to be paid. But I guess I feel like that I don't understand the lay of the land here well enough on that. I don't think there's any evidence in the record or any reason that Implicit has provided why they didn't correct this inventorship earlier other than they just point to the board's decision and the fact findings as illuminating inventorship, and that's the reason they changed inventorship. But again, the board never- They also are pointing to, though, the interplay with Arthrex as justifying their proposed waiting two years post the final written decision. So I don't know if you want to speak to that as well, but that's the additional reason I heard opposing counsel say they. I heard that as well, and I don't think there's any reason. Once that board decision came out, and if it changed inventorship, I don't think it did, but even if they believed that it did, they should have changed inventorship right then and there. There's no reason to wait two years. They could have filed a petition with the director to correct inventorship at any time. They could have done it in 2018 when their patent owner response was due. They could have done it in 2019 after the board decision. There's simply no reason to wait until 2021. What about the fact that the decision either was vacated or might be vacated? Do you think that has no impact? That has impact on the decision, but I don't think that impacted their ability to correct inventorship. Even though the fact findings in the board's opinion were vacated at the time? Correct. Even though the fact findings were vacated at the time, the patent is still in existence, and they can correct that inventorship at any time. I'm not aware of any rule that would prevent them from changing it. What about the argument that inventorship is a complex issue, and they had the position, they thought that their inventorship would be the two named inventors originally were sufficient, or those were the inventors, and it wasn't until ... I understand you don't think the board's opinion changed anything, but do you think that there could never be a circumstance where an opinion could change someone's outlook on inventorship? Certainly, there are situations, and LendingTree and EGENERA are good examples, where the deciding tribunal in that case that was the district court did something. There was an intervening change in EGENERA. It was the change in the scope of the claim because of the district court's claim construction. It broadened the scope of the claim, which required adding in an inventor. In the LendingTree case, the jury issued a verdict of patent invalidity based on incorrect inventorship, and that required changing the inventorship to make it correct. In this case, there's no intervening decision by the PTAB or this court or any tribunal that changed inventorship, so if they wanted to make this argument, the time to do it would have been in the patent owner response or when it was pending before the board decision. There's no reason why they couldn't have been able to change it then. Can I just return one last time to the potential mootness framing? The final written decision on review here is a decision about a no longer existing and kind of retroactively never actually existed patent, namely the one without the correct inventorship. That suggests to me that the matter before us is moot, that is, whether the final written decision is correct or not. It's about a matter that doesn't even exist anymore. Why is that not the right way to look at it, and if so, what is the right remedy? Dismissal or dismissal plus vacater? So in reading the cases that involve these corrections of inventorship, like LendingTree is a good example where the jury found the inventorship was incorrect, this court did not vacate the jury's determination. In that case, this court remanded for the district court to use its discretion to decide whether it would be equitable to vacate the jury's determination. So I don't think mootness is really at play here. I think the patent still exists, the inventorship has changed, but all of the issues that have been decided concerning anticipation and obviousness are still applicable. I don't think anyone's ever argued that this should be decided on a mootness case. Well, I perfectly agree. Nobody has argued it, but there is no live issue about any of the obviousness, or is there an anticipation? Yes, there are anticipation issues here on the assumption, oh, I forget about assumption, on the original uncorrected patent, because that original uncorrected patent is defunct and retroactively defunct. I'm not sure I have a good answer for you on this question. I think the proper way to handle it is just to affirm the board's decision and find that they forfeited this argument. It's just essentially a new argument that they should have raised earlier in forfeiture principles applied to section 256 corrections of inventorship, and there's no reason not to apply it here. If you look at the Supreme Court's decision in Halvering, they talked about one of the reasons for forfeiture is to avoid sandbagging, where you have two arguments, you lead with one, you keep one behind you, and then if you lose in your first argument, you raise the second argument and say that the tribunal erred and you have to redo the proceeding. That's essentially what we have here. Implicit was in possession of all the facts concerning inventorship. They chose one legal strategy. If they succeeded in that legal strategy, they probably wouldn't have corrected their inventorship. It's only because they lost and the board found that they failed to meet their burden of proof and proving conception and communication to Guy Carpenter that they're correcting their inventorship, and I think that's just classic forfeiture. Thank you for your argument. Thank you. Where is our timekeeper? Where's our timekeeper? Oh, sorry. Three minutes. Thank you, Your Honor. Whether it's under principles of mootness or more along the lines of Lending Tree or Airbus, we believe that this court should vacate the final written decisions here, and there are a couple of reasons for that. I think one is the Lending Tree court recognized to let this judgment stand would appear to violate the letter and the spirit of Section 256, and that's what this court recognized in Lending Tree. The provision is retroactive and exists precisely for this reason, to prevent these avoidable forfeitures. It's unique in patent law, but it is a provision that applies retroactively to do this, and in fact, this is one way in which 256 is very different from its sister provisions in 255 or 254. In Section 255, for example, Certificate of Corrections for Appellant's Mistakes, those apply only to the trial of actions for causes thereafter arising, so only prospectively, but this is fundamentally different, and so I think that warrants a vacature, given the unique aspects of 256 at play here. Also, Judge Cunningham, to go back to your question a little bit on the timing of this, I think any time you add an inventor to a patent, there are complex issues with ownership of the patent and arrangements that need to be worked out there, so that is always a consideration when you are considering whether or not someone's an inventor or whether that makes sense. It's a hurdle to overcome, and in this situation ... Did we have anything in the record explaining that this might be such a thing? I thought Carpenter worked for the same entity, and when the Certificate of Correction was requested, the documentation which he signed made it clear that the same entity still was the assignee of the thing. That's correct. That's not an issue, right? I'm not aware of anything in this record, other than to point out that my understanding is that there were contractual arrangements that needed to be made to actually add him to an inventor. He was no longer affiliated or associated, my understanding, with Implicit as a company at the time that this occurred, so it did require some work to do that, but again, I think the fundamental changes here we saw in Arthrex, again, we were operating in a universe where the final written decisions were either vacated or subject to vacature, and we could have had a new board come to a different conclusion on this. Again, we disagree that we think the final written decisions did shed a lot of light on the inventorship issue, particularly that the board found that we were unable to show that Mr. Balistain and Mr. Bradley had an earlier conception of this invention, one that predated these documents that we know show a reduction of practice of the invention, so it's hard to imagine a world where that doesn't influence the outcome of this complex legal issue. In your view, would there be any period of time that would be too late for you to have raised the correction of inventorship? I know that you're contending that two years after the final written decision came out was timely, effectively, but is there any sort of time period that you think would effectively be untimely in terms of waiting to raise it? So, to answer your question, I think the answer is yes, Your Honor. I think that there are situations where principles of finality do come into play. If you have, for example, a final judgment at a district court, for example, that could be an issue. Rule 60 can apply in certain circumstances to allow vicature of final judgments in certain restricted situations, but we don't think it's infinite, Your Honor. But here I would point out that this was done at our first opportunity for director review, and I know that today that occurs immediately after a final written decision, but at the time, we made the correction at the first opportunity that we had, and we knew the final written decisions were in place. They weren't being vacated, and we had an opportunity, again, to go before the executive agency. Thank you, Your Honor. Thank you. Thanks to all counsel. The case is submitted.